# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TONY GOODMAN, | : CIVIL ACTION NO. |
| ID # 66708019, | : 1:15-CV-01724-TWT-JSA |
|     Plaintiff, | : |
| | : |
| v. | : |
| | : |
| THE ROBERT A. DEYTON DET. FACILITY, | : PRISONER CIVIL ACTION |
| THE GEO GROUP INC., | : 28 U.S.C. § 1331 |
| R. CHERRY, Facility Adm'r, | : |
| D. HORTON, Assistant Facility Adm'r, | : |
| H. WALKER, Chief of Security, | : |
| ALLAN McLEOD, Special Agent, | : |
| JOHN DOES 1 & 2, Special Agents, | : |
| THE U.S. MARSHAL SERVICE, et al., | : |
|     Defendants. | : |

## MAGISTRATE JUDGE'S ORDER AND
## NON-FINAL REPORT AND RECOMMENDATION

Plaintiff, a detainee at the Robert A. Deyton Detention Facility ("the Facility") in Lovejoy, Georgia, has filed a 42 U.S.C. § 1983 complaint (Doc. 1) and several motions (Docs. 3-7, 10). He has paid the filing and administrative fees in full, and this matter is now ready for an initial screening.

**I.   Frivolity Review**

Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer

AO 72A
(Rev.8/82)

or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process."  *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives." *Id.* at 678-79.  To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  *Id.* at 679.

## II.  **Plaintiff's Complaint and Motions**

Plaintiff signed his complaint on May 7, and it was docketed on May 14, 2015. (Doc. 1).  This case was re-assigned on May 29 after the recusal of the original Magistrate Judge.  (Doc. 2).  Plaintiff sues the following Defendants: (1) the Facility;

(2) the GEO Group, Inc. ("GEO"); (3) R. Cherry, Facility Administrator; D. Horton, Assistant Facility Administrator; and H. Walker, Chief of Security ("the Facility Defendants"); (6) Special Agent Allen McLeod of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); and two John Doe special ATF agents ("the ATF Defendants"); and (7) the U.S. Marshal's Service ("USMS"). (Doc. 1 at 1, 3; *see id.* at 15). Plaintiff presents the following allegations.

### A. Allegations Against Unspecified Defendants

Plaintiff alleges that he arrived at the Facility at about 3 p.m. on March 20, 2015 with "thoracic back/spine pain, abdominal pain . . . head pain and chest pain." He is "wheelchair-bound due to paraplegia." (*Id.* at 12). At about 10 p.m. that same day, he was placed in a cell too small for his wheelchair. As a result, he fell to the floor and injured his head, spine and abdomen while attempting to transfer to the toilet at about 11 p.m. (*Id.*). On July 29, 2015, Plaintiff filed a Motion for Retaliation (Doc. 10), alleging that "he is being forced to sit, eat, read, write, and sleep in a pool of water that comes from the sink and toilet inside of his cell" and that on June 28 he fell and was injured while transferring "from his wheelchair to the toilet on his own" (*id.* at 1). Plaintiff does not name a specific Defendant for these allegations.

### B. Allegations Against the Facility Defendants

3

Plaintiff alleges that he was injured on April 5, 7 and 10, 2015, when attempting to transfer from his wheelchair to a shower chair, without assistance, "and on several other occasions, he [was] forced to sit in his own feces and urine" while Facility Defendants Cherry, Horton and Walker, and others unnamed, "refused to assist him in cleaning up the waste"; these Defendants also have denied him "access to virtually all prison programs and services on account of his disability"; and they unnecessarily confine him and other wheelchair-bound detainees in "medical units where access to work, job training, recreation and rehabilitation programs is being denied." (*Id.* at 8-9).

Plaintiff claims a violation of his First Amendment right to file grievances against these Defendants, which they have ignored, and alleges that they have denied him due process in some unspecified way (*id.* at 9-10; *see id.* at 7-8); have "suppress[ed his] religious belief and/or practice" by denying him access to religious services; and generally have denied him equal protection of the law without a rational basis for the unequal treatment (*id.* at 11).

### C. Allegations Against the ATF Defendants

Plaintiff alleges that Agent McLeod and two John Doe agents pulled him "down three (3) steps" while he was in his wheelchair and then "punched, kicked, kneed,

4

choked and body slammed him maliciously and sadistically and without any provocation," causing him "thoracic back pain, abdominal pain, anterior wedge compression deformity of T6 vertebral body, head pains and other injuries requiring medical treatment." (*Id.* at 10). Although Plaintiff suggests that these individuals are USMS agents (*id.*), elsewhere he refers to all three as agents of the ATF (*id.* at 3, 15). In an attached grievance, Plaintiff states that at approximately 7 p.m. on March 18, 2015, two days *before* he was placed in detention at the Facility, he "was pulled down three steps in a wheel chair - by officers McCloud et al. [USM officers]" and he "was injured." (*Id.* at 16).

### D.     Plaintiff's Requests for Relief and Motions

Plaintiff seeks, *inter alia,* compensatory and punitive damages. (*Id.* at 13). In addition, between June 18 and June 29, Plaintiff signed and filed three emergency motions for a status update (Docs. 3-5); on July 10, he signed and filed a motion seeking the recusal of the District Judge (Doc. 6); on July 26, he signed and filed a motion for emergency assistance because he lacks the funds in his inmate account to pay for postage and other costs of communicating with the Court (Doc. 7); and, as noted above, on July 29 he filed a motion for retaliation (Doc. 10).

### III.    Discussion

5

### A.   Plaintiff's Claims Against the Facility, GEO and the Facility Defendants May Not Proceed

Plaintiff may not sue the Facility itself.  The Eleventh Circuit has noted that a jail "is not an entity capable of being sued under Georgia law." *Brannon v. Thomas County Jail*, 280 Fed. Appx. 930, 934 n.1 (11th Cir. 2008).  Legal capacity to be sued is determined according to state law, *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992), and based on Georgia law, *Brannon*, 280 Fed. Appx. at 934 n.1, Plaintiff may not sue the Robert A. Deyton Detention Facility.

Plaintiff is detained at a federal detention center that is run by GEO, a private corporation.[1]  No potential Defendant is acting under color of state law, therefore, and Plaintiff's claims are properly brought, if at all, only under the authority either of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), a federal statute that creates a cause of action for Plaintiff or state law.  To state a claim for relief under

---

[1] In September 2007, the Office of the Federal Detention Trustee (OFDT) issued a solicitation for the management and operation of a secure detention facility for federal detainees. The population is comprised of individuals charged with federal offenses and detained while awaiting trial, sentencing, or hearings.  In January 2008, The GEO Group, Inc. (GEO) was awarded the contract to house inmates. . . . At the Robert A. Deyton Detention Facility, GEO provides secure care, custody and control for US Marshals prisoners.

www.geogroup.com/maps/locationdetails/16 (last visited Aug. 17, 2015); *see also* www.justice.gov/archive/ofdt/robert-deyton-detention-facility.pdf (last visited Aug. 17, 2015); (Doc. 1 at 15).

6

*Bivens*, a plaintiff must allege that a federal agent, by act or omission under color of federal authority, deprived him of a right, privilege, or immunity secured by the Constitution of the United States.  *See Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *see also Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (setting forth similar requirements for 42 U.S.C. § 1983 claim against person acting under color of state law); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (noting that "as a general matter federal courts incorporate § 1983 law into *Bivens* actions").[2]

> [But] unlike federal prisoner suits against government employees, federal prisoners at a privately run federal prison cannot bring a *Bivens* action against the private corporation that manages the prison, or its privately employed personnel working there, when there is a remedy under state tort law.  [T]hat prohibition is more than offset by the ability to bring actions for simple negligence—a ground not available, for instance, in an Eighth Amendment claim under § 1983.

*Phillips v. Tiona*, 508 Fed. Appx. 737, 752 (10th Cir. 2013) (footnote and citations omitted) (citing *Minneci v. Pollard*, 132 S. Ct. 617, 620, 626 (2012); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72-73 (2001)).  Thus, Plaintiff may not sue GEO or the Facility Defendants under *Bivens*.

---

[2]Plaintiff is a pretrial detainee, and "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.  [But] the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."  *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted).

7

It appears, however, that Plaintiff is attempting to bring a claim against GEO and/or the Facility Defendants directly under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and/or under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (*See* Doc. 1 at 16, 18, 19). Those attempts fail, however, as shown below.

"Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities. *See* 42 U.S.C. § 12132. [But] '[o]nly public entities are liable for violations of Title II of the ADA.' " *Owens v. Sec'y, Fla. Dep't of Corr.*, 602 Fed. Appx. 475, 477 (11th Cir. 2015) (quoting *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010)). In pertinent part, "[t]he ADA defines 'public entity' as '(A) any State or local government; [or] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; . . . .' " *Lee v. Corr. Corp. of Am.,* 61 F. Supp. 3d 139, 143 (D.D.C. 2014) (quoting 42 U.S.C. § 12131).

> As a private prison company, [GEO] is not covered by Title II of the ADA. The ADA's text provides no indication that a private company is a "public entity" for the purposes of Title II. Further, the regulation states that Title II 'applies to public entities' that operate or manage prisons through contracts with private entities, not to contractors themselves. [28 C.F.R.] § 35.152(a). "A private contractor does not . . . become liable under Title II merely by contracting with the State to provide

8

governmental services, essential or otherwise."

*Id.* (quoting *Edison*, 604 F.3d at 1310); *see also Tiona*, 508 Fed. Appx. at 752 ("Title II of the ADA does not apply to federal prisoners in federal prisons, including those privately managed by corporations such as [GEO]. That is so because Title II covers only states and defined appendages thereof.").

Nor may Plaintiff recover under the Rehabilitation Act, which "provides in pertinent part: 'No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .' 29 U.S.C. § 794(a)." *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1334 *et seq.* (11th Cir. 2005) (noting the distinction between a subsidy, which constitutes Federal financial assistance, and compensation for services or loss, which does not).

> Although defendant receives federal funding through its contracts with the Bureau of Prisons and U.S. Marshals Service, it does not receive "Federal financial assistance" within the meaning of the Rehabilitation Act. Courts interpreting § 504 of the Rehabilitation Act[, 29 U.S.C. § 794(a),] have consistently construed "Federal financial assistance" to mean the federal government's provision of a subsidy to an entity, not the federal government's compensation of an entity for services provided. *See Nolley v. Cnty. of Eerie*, 776 F. Supp. 715, 742-43 (E.D.N.Y. 1991) (holding that a correctional facility receiving federal funds for detaining

9

> prisoners did not receive "Federal financial assistance" and therefore was not covered by the Rehabilitation Act); *see also Shotz*, 420 F.3d at 1335 (holding that an entity receives "Federal financial assistance" within meaning of the Rehabilitation Act when it receives a subsidy from the federal government). Because plaintiff does not allege that defendant receives subsidies from the federal government, the Court will dismiss his Rehabilitation Act claim.

*Lee*, 61 F. Supp. 3d at 144 (citation altered).  In sum, Plaintiff may not sue GEO or the Facility Defendants under *Bivens*, the ADA or the Rehabilitation Act.  These Defendants, along with the Facility itself, are due to be dismissed from this action.

### B.     Plaintiff's Claim Against the ATF Defendants May Proceed

Plaintiff has raised an excessive force claim against three employees of the ATF or the USMS, both federal agencies, alleging that they severely beat him, a paraplegic, without provocation. (Doc. 1 at 10).  In determining whether the use of force against a prisoner has violated the Eighth Amendment, a court must weigh the following factors: (1) the need for the use of force, (2) the relationship between the need and the amount of force, (3) the threat that the prison official reasonably perceived, (4) the efforts made to temper the severity of the force used, and (5) the extent of the prisoner's injuries.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1304 (11th Cir. 2002) (noting that "[t]he law of excessive force in this country is that a prisoner cannot be subjected to gratuitous or

10

disproportionate force that has no object but to inflict pain").

> The Supreme Court has stated that prison administrators should be given wide-ranging deference in their decisions regarding prison security, especially when confronting actual unrest, such as a riot. *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (citation omitted). However, officials may not use force against a prisoner who has already been subdued because "[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists." *Skrtich*, 280 F.3d at 1304 (citation omitted); *see also Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting–whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated–that use of force is excessive.").

*Council v. Sutton*, 366 Fed. Appx. 31, 36 (11th Cir. 2010) (citations altered); *see id.* at 36-38 (affirming denial of qualified immunity to deputies who used taser and shotgun with beanbag rounds against prisoner who alleged "he remained subdued and on the floor while the Deputies used the taser and shotgun on him").

Here, Plaintiff has pled "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *see Iqbal*, 556 U.S. at 678, that the ATF Defendants used excessive force against him.

### C. The USMS Must Be Dismissed

But Plaintiff may not sue the USMS. "While the Supreme Court in *Bivens* ruled that a plaintiff may file suit for constitutional violations against federal officials in their

11

individual capacity, there is no corresponding right to file suit against a federal agency." *Leonard v. Marra*, No. 5:05-CV-262(CAR), 2005 U.S. Dist. LEXIS 22357, at *3 n.2 (M.D. Ga. Sept. 22, 2005) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 484 (1994)); *see Meyer*, 510 U.S. at 486 ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself. We therefore hold that Meyer had no *Bivens* cause of action for damages against FSLIC.").

## IV.  Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that all Defendants except the three ATF Defendants be **DISMISSED** from this action and that Plaintiff's excessive force claim against the three ATF Defendants be **ALLOWED** to proceed as in any other civil action.[3]

---

[3] Although Plaintiff might be able to make out state-law claims against the Facility Defendants, it is apparent from Plaintiff's complaint and attachments that those claims would involve events unrelated to the events underlying his claims against the ATF Defendants in time, place and operative fact because Plaintiff alleges that the ATF Defendants assaulted him two days *before* he entered the Facility. (*See* Doc. 1 at 12, 16). This Court therefore declines to assert supplemental jurisdiction over any state-law claim against the Facility Defendants, even if Plaintiff had intended to raise such a claim in his complaint or would attempt to amend his complaint to do so. *See* 28 U.S.C. § 1367(a) ("Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Mines v. Barber*, No. 14-13122, 2015 U.S. App. LEXIS 6982, at *6 (11th Cir. Apr. 28, 2015) ("A district court can exercise supplemental jurisdiction over all state claims that arise from a common nucleus of operative facts with a substantial federal claim."); *see also Little v. Dean*, 606 Fed. Appx. 581, at *3 (11th Cir. July 10, 2015) (" '[T]he

Plaintiff's Motion for Assistance (Doc. 7) is **DENIED**; his three motions for status updates (Docs. 3-5) are **DENIED as moot**; and his Motion for Retaliation (Doc. 10) is **GRANTED in part**—to the extent that the allegations in the motion have been construed as an amendment to Plaintiff's complaint and considered on the merits—and is otherwise **DENIED**.

The undersigned declines to address Plaintiff's motion for recusal of the District Judge.  (Doc. 6).

**SO RECOMMENDED and ORDERED** this 18th day of August, 2015.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court.' " (quoting *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004)))).